## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **SERGIY GUMENYUK,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action 4:20-cv-00285** |
| | § | |
| **MARLOW NAVIGATION COMPANY,** | § | |
| **LTD, JANS HS SCHIFFAHRTS** | § | |
| **GMBH and HS SCHIFFAHRTS GMBH** | § | |
| **& CO KG.,** | § | |
| **Defendants.** | § | |

---

### DEFENDANT MARLOW'S MOTION TO COMPEL ARBITRATION

---

Respectfully submitted,

**HOLMAN FENWICK WILLAN USA LLP**

*/s/ Jeanie Tate Goodwin*
Michael J. Wray
TBA 24052191, SDTX 381651
Michael.Wray@hfw.com
5151 San Felipe, Suite 400
Houston, Texas 77056
Telephone: (713) 917-0888
Facsimile: (713) 953-9470
**ATTORNEY-IN-CHARGE FOR DEFENDANT**
**MARLOW NAVIGATION COMPANY, LTD.**

**OF COUNSEL:**
**Holman Fenwick Willan USA LLP**
Jeanie Tate Goodwin
Jeanie.Goodwin@hfw.com
TBA 24046949, SDTX 592456

**TABLE OF CONTENTS**

I.    NATURE AND STAGE OF THE PROCEEDINGS   .................................... 1

II.   STATEMENT OF THE ISSUE   .................................................... 1

III.  SUMMARY OF ARGUMENT   ................................................... 2

IV.   FACTUAL BACKGROUND   ..................................................... 2

      A.    Plaintiff Alleges Injury Aboard the *M/V BBC Amsia*   ........................... 2

      B.    On the Date of the Incident, Schiffahrts Owned the *M/V BBC Amsia*, and Marlow Managed the Crew   ....................................................... 3

      C.    Plaintiff Judicially Admits that Marlow Employed Him Aboard the *M/V BBC Amsia*   ........................................................................ 3

      D.    Plaintiff's Union, on Plaintiff's Behalf, Entered into a Collective Bargaining Agreement with Marlow   .......................................................... 3

      E.    The CBA Protects the Plaintiff in Case of an Injury, and Plaintiff Benefitted from the Terms of the CBA after the Incident   ................................... 4

      F.    The CBA Calls for Arbitration of "Any Disputes" in Cyprus   ................... 4

V.    MOTION TO COMPEL ARBITRATION   ...................................... 5

      A.    The Supreme Court has Instructed that Arbitration Clauses are Heavily Favored and are to be Rigorously Enforced by the Courts   ..................... 5

      B.    The Court Should Compel Arbitration because the Agreement Meets the Four Determining Factors Required by the Convention Act   .................... 7

      C.    There is a Written Agreement to Arbitrate Plaintiff's Claims in the Marlow CBA   ........................................................................... 8

            1.    Plaintiff, through his union, entered into a written contract with Marlow which contains an arbitral clause.   .............................. 8

            2.    Plaintiff's claims in this lawsuit fall within the scope of the arbitration clause in the Marlow CBA.   .................................. 11

      D.    The Arbitration Agreement Provides for Arbitration in the Territory of a Convention Signatory   ....................................................... 12

E.     The Agreement Arises Out of a Seaman's Employment which is a Commercial Legal Relationship  ......................................................................... 12

F.     Neither Plaintiff, Marlow, nor the Union are American Citizens  ..................... 13

VI.     CONCLUSION  .......................................................................................... 13

APPENDIX 1 – EXHIBITS

1      Declaration of Andreas Neophytou

2      Marlow CBA

3      Marlow Standard Crew Hire Contract

4      Statement of Receipt and Release

5      Coast Guard form 2692

## <u>TABLE OF AUTHORITIES</u>

**<u>Treaty</u>**

Convention on the Recognition and Enforcement of Foreign Arbitral Awards,
330 U.N.T.S. 3 ............................................................................... *passim*

**<u>Statutes</u>**

The Federal Arbitration Act, 9 U.S.C. §§ 1-16 ................................................ *passim*

The Convention Act, 9 U.S.C. §§ 201-208 ...................................................... *passim*

**<u>Cases</u>**

*Alberts v. Royal Caribbean Cruises, Ltd.*,
834 F.3d 1202 (11th Cir. 2016) ................................................................... 2

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
513 U.S. 265 (1995) ................................................................................. 6

*AT & T Technologies, Inc. v. Communications Workers of America*,
475 U.S. 643 (1986) ................................................................................ 11

*Bank One v. Hill*,
367 F.3d 426 (5th Cir. 2004) ...................................................................... 7

*Bautista v. Star Cruises*,
396 F.3d 1289 (11th Cir. 2005) ............................................................... 2, 12

*City of Meridian, Miss. v. Algernon Blair, Inc.*,
721 F.2d 525 (5th Cir. 1983) ...................................................................... 5

*El Paso Field Sers., L.P. v. MasTec N. Am., Inc.*,
389 S.W.3d 802 (Tex. 2012) ...................................................................... 9

*Ensco Offshore Co. v. Titan Marine LLC*,
370 F. Supp. 2d 594 (S.D. Tex. 2005) .......................................................... 7

*First Options of Chicago, Inc. v. Kaplan*
514 U.S. 938 (1995) ................................................................................. 8

*Francisco v. Stolt Achievement MT*,
293 F.3d 270 (5th Cir. 2002) ............................................................... 2. 7, 12

iv

*Freudensprung v. Offshore Technical Servs., Inc.*,
   397 F.3d 327 (5th Cir. 2004)  ............................................................  2, 7, 13

*Fujimoto v. Rio Grande Pickle Co.*,
   414 F.2d 648 (5th Cir. 1969)  ........................................................  10

*Galtney v. KPMG LLP*,
   No. H-05-583, 2005 WL 1214613 (S.D. Tex. May 19, 2005)  .............................  6, 7, 13

*J.M. Davidson, Inc. v. Webster*,
   128 S.W.3d 223 (Tex. 2003)  ........................................................  10

*Kubala v. Supreme Production Services, Inc.*,
   830 F.3d 199 (5th Cir. 2016)  .......................................................  8

*Ledee v. Ceramiche Ragno*,
   684 F.2d 184 (1st Cir. 1982)  ........................................................  7

*Lim v. Offshore Specialty Fabricators, Inc.*,
   404 F.3d 898 (5th Cir. 2005)  ........................................................  2

*Martinez v. Bally's La., Inc.*,
   244 F.3d 474 (5th Cir. 2001)  .......................................................  3

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985)  ...............................................................  5, 6, 10

*Moses H. Cone Mem'l Hosp.*,
   460 U.S. 1 (1983)  .................................................................  5

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972)  .................................................................  6

*Parks v. Frankfurt*,
   476 S.W.2d 717 (Tex. Civ. App.—Beaumont 1972, writ ref'd n.r.e.)  ......................  10

*Reilly v. Rangers Mgmt., Inc.*,
   727 S.W.2d 527 (Tex. 1987)  ........................................................  10

*Scherk v. Alberto-Culver Co.*,
   417 U.S. 506 (1974)................................................................  6

*Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*,
   767 F.2d 1140 (5th Cir. 1985)  ......................................................  7, 11, 13

*Shearson/American Express, Inc. v. McMahon*,
    482 U.S. 220 (1987) ........................................................................................... 5

*Sphere Drake Ins. PLC v. Marine Towing, Inc.*,
    16 F.3d 666 (5th Cir. 1994) .............................................................................. 8

*Todd v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.*,
    601 F.3d 329 (5th Cir. 2010) ............................................................................ 1

*United Steel Workers v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960) ........................................................................................... 5

*Webb v. Investacorp, Inc.*,
    89 F.3d 252 (5th Cir. 1996) .............................................................................. 8

*Walton v. Rose Mobile Homes LLC*,
    298 F.3d 470 (5th Cir. 2002) ............................................................................ 7

## MARLOW'S OPPOSED MOTION TO COMPEL ARBITRATION

Defendant Marlow Navigation Company, Ltd. ("Defendant" or "Marlow"), preserving all defenses under Rule 12(b)(1 – 7),  asks the Court to compel arbitration and stay this action pending arbitration.

### I.
### NATURE AND STAGE OF THE PROCEEDINGS

On October 22, 2019, Plaintiff Sergiy Gumenyuk sued in Harris County District Court alleging personal injuries to his left arm and hand and seeking recovery for Jones Act negligence, unseaworthiness, and maintenance and cure. Dkt. 1-2, Pl.'s Orig. Pet. at ¶¶ 7-14.  On January 24, 2020, Defendant Marlow removed this action to the United States District Court for the Southern District of Texas, Houston Division, under 9 U.S.C. § 205 which sanctions the removal of a lawsuit whose subject relates to an arbitration agreement falling under the New York Convention.  Dkt. 1. On February 1, 2020, Plaintiff filed a Motion to Remand.  Dkt. 3.  On May 6, 2020, the Court denied that motion.  Dkt. 14.  Marlow now requests that the Court compel arbitration under the Collective Bargaining Agreement between Marlow and Plaintiff's union.

### II.
### STATEMENT OF THE ISSUE

Does the Convention Act require the Court to compel arbitration in Cyprus under the arbitration clause in the Collective Bargaining Agreement between Marlow and Plaintiff's union? Yes, as contemplated by section 202 of the Convention Act, 9 U.S.C. § 202.  The appellate court reviews de novo the denial of a motion to compel arbitration under the Convention.  *Todd v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.*, 601 F.3d 329, 331-32 (5th Cir. 2010).

## III.
## SUMMARY OF ARGUMENT

The federal courts, and especially the Fifth Circuit, have consistently enforced federal arbitration policy against Jones Act seamen contracts under 9 U.S.C. § 201-208 ("the Convention Act"), which implements the Convention on Recognition and Enforcement of Foreign Arbitral Awards ("the Convention").  *See, e.g., Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 906 (5th Cir. 2005); *Freudensprung v. Offshore Technical Servs., Inc.*, 397 F.3d 327, 338-39 (5th Cir. 2004); *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 273-74 (5th Cir. 2002); *Alberts v. Royal Caribbean Cruises*, *Ltd.*, 834 F.3d 1202, 1204-05 (11th Cir. 2016); *Bautista v. Star Cruises*, 396 F.3d 1289, 1295 (11th Cir. 2005).  Assuming as true Plaintiff's judicial admission that Marlow employed him at the time of the incident, Plaintiff's employment was subject to an arbitration clause calling for arbitration in Cyprus.  The agreement to arbitrate satisfies the requirements for compelling arbitration as set forth by the Fifth Circuit.  Given controlling circuit precedent and the strong federal policy in favor of international arbitration agreements, applying the Convention to Plaintiff's agreement to arbitrate warrants a stay pending the agreed-upon arbitration.

## IV.
## FACTUAL BACKGROUND

### A.    Plaintiff Alleges Injury Aboard the *M/V BBC Amisia*

Gumenyuk, a permanent resident of Ukraine, alleges a November 16, 2016, personal injury while working in the course and scope of his employment as a Jones Act seaman aboard the *M/V BBC Amisia* docked at the Manchester Terminal in the Port of Houston.  Dkt. 1-2, Pl.'s Orig. Pet. at ¶¶ 7-11.  Gumenyuk broadly alleges that all defendants employed Plaintiff and owned, operated, or managed the vessel.  Dkt. 1-2, Pl.'s Orig. Pet. at ¶ 7.  Mr. Gumenyuk was the Chief Mate and

alleges personal injury to his left arm and hand seeking recovery for Jones Act negligence, unseaworthiness, and maintenance and cure. Dkt. 1-2, Pl.'s Orig. Pet. at ¶¶ 7-14.

**B.     On the Date of the Incident, Schiffahrts Owned the *M/V BBC Amisia*, and Marlow Managed the Crew**

HS Schiffahrts GmbH & Co. KG MS "Jan" ("Schiffahrts") owned the *M/V BBC Amisia* on the date of the incident.[1]   Since 2013, and including the date of the incident, Marlow acted as a crew manager for the *M/V BBC Amisia*.[2]   Marlow is a third party ship and crew management company based in Limassol, Cyprus.[3]

**C.     Plaintiff Judicially Admits that Marlow Employed Him Aboard the *M/V BBC Amisia***

Plaintiff maintains in his lawsuit that Defendant Marlow employed him on the date of the incident.   Dtk. 1-2, Pl.'s Orig. Pet. at ¶ 7.   This is a judicial admission made by the Plaintiff releasing Marlow from proving this fact.   *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001).   Although Marlow denies that it employed Plaintiff at the time of the incident, it will assume as true Plaintiff's judicial admission for the purposes of this motion.

**D.     Plaintiff's Union, on Plaintiff's Behalf, Entered into a Collective Bargaining Agreement with Marlow**

Plaintiff's union, the Black Sea Seaman's Trade Union ("Union"), entered into a Collective Bargaining Agreement with Marlow that was in effect on the date of Plaintiff's injury, November 16, 2016.[4]   The CBA "sets out the standard terms and conditions applicable to all Ukrainian

---

[1]      Ex. 5, Coast Guard form 2692; ex. 1, Neophytou Decl. at ¶ 7.   The vessel on which Plaintiff sailed at the time of the incident is known by IMO number 9267297.   In 2016, it was known as the *M/V BBC Amisia*.   It was previously known as the *M/V Jan*.   Even though the name may change, the IMO number remains the same.

[2]      Ex. 3, Schiffahrts/Marlow Standard Crew Hire Contract; ex. 1, Neophytou Decl. at ¶ 7.

[3]      Ex. 1, Neophytou Decl. at ¶ 4; Marlow Navigation website, https://marlow-navigation.com/en/worldwide-network.asp (last visited July 8, 2020).

[4]      Ex. 1, Neophytou Decl. at ¶¶ 8-9; ex. 2, Marlow CBA at art. 30.1 (effective dates of January 1 through December 31, 2016, renewing automatically until terminated in writing).

seafarers serving on any ship manned by [Marlow]."[5]  The CBA also sets out the terms of the seafarer's employment:

> 1.2     This Agreement is deemed to be incorporated into and to contain the terms and conditions of employment of any seafarer to whom this Agreement applies whether or not the company has entered into an individual Employment Agreement with the Seafarer.[6]

If Marlow employed Plaintiff, as judicially admitted by by Plaintiff in his Original Petition, then the Marlow CBA governs Plaintiff's employment.

**E.    The CBA Protects the Plaintiff in Case of an Injury, and Plaintiff Benefitted from the Terms of the CBA after the Incident**

The CBA contains several protections for seafarers, including protections for when a seafarer is injured or disabled during employment.  Article 19, entitled "Disability," sets out what payment Marlow owes a seafarer who suffers a permanent disability during his employment.[7]  It also clarifies that any such payment is a total settlement of the case.[8]  Plaintiff benefitted from these provisions in the CBA.  Once he recovered from his injury and received a disability rating, Plaintiff fully and finally released all of his claims related to the incident in exchange for payment of $156,000.[9]

**F.    The CBA Calls for Arbitration of "Any Disputes" in Cyprus**

Article 29 of the CBA, entitled "Disputes and Arbitration," discusses the method for resolving all disputes the seafarer has with Marlow.[10]  It calls for arbitration in Cyprus:

> **Article 29: Disputes and Arbitration**
>
> 29.1 For any disputes a Seafarer is compelled to approach the Union, which will in turn endeavor to settle the dispute directly with the Company.

---

[5]     Ex. 2, Marlow CBA at art. 1.1.
[6]     Ex. 2, Marlow CBA at art. 1.2.
[7]     Ex. 2, Marlow CBA at art. 19.1.
[8]     Ex. 2, Marlow CBA at art. 19.3.
[9]     Ex. 4, Statement of Receipt & Release.
[10]    Ex. 2, Marlow CBA at art. 29.

29.2
    a) This agreement shall be subject to ***Cyprus Law*** and international conventions, treaties and covenants wherein ***Cyprus*** is a signatory.

    b) The Contracting Parties shall discuss and negotiate amicably settlement of any situations and/or differences that may arise.

    c) In the event that the Contracting Parties are unable to reach an agreement, the dispute shall be referred to the ***Cyprus Courts.***

    d) Any award rendered by the arbitrators shall be final and binding on the Contracting Parties.[11]

## V.
## MOTION TO COMPEL ARBITRATION

### A.    The Supreme Court has Instructed that Arbitration Clauses are Heavily Favored and are to be Rigorously Enforced by the Courts

Arbitration agreements are governed by either 9 U.S.C. §§ 1-16, the Federal Arbitration Act, or 9 U.S.C. §§ 201-208, the Convention Act. The Federal Arbitration Act provides this Court with the general authority to order compulsory arbitration. 9 U.S.C. §§ 3, 4, 9. The Convention Act also requires courts to enforce any written agreement which provides arbitration as the mechanism to resolve international commercial disputes. 9 U.S.C. §§ 201-208. Claims to arbitrate are heavily favored and rigorously enforced by the United States Supreme Court. *See, e.g., Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Supreme and Circuit Court precedent mandates that, as a matter of law, any doubts about the scope of arbitrable issues are to be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp.*, 460 U.S. 1, 24-25 (1983); *United Steel Workers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 583 (1960); *City of Meridian, Miss. v. Algernon*

---

[11]    Ex. 2, Marlow CBA at art. 29.

*Blair, Inc.*, 721 F.2d 525, 527 (5th Cir. 1983).  This is especially true in agreements affecting interstate and foreign commerce.  *Mitsubishi Motors Corp.*, 473 U.S. 614, 631.  This Court has also held the trial judge is to "resolve all ambiguities in favor of arbitration."  *Galtney v. KPMG LLP,* No. H-05-583, 2005 WL 1214613, at *3 (S.D. Tex. May 19, 2005) (Werlein, J.).

The enforceability of arbitration clauses in international commercial agreements is similar to the analysis used in forum selection clause cases.  In *Scherk v. Alberto-Culver Co.* and *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, the Supreme Court enforced arbitration clauses and relied substantially on the opinion in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), which analyzed a pure forum selection clause case.  *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 518-20 (1974); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 629-30 (1985).  The court in *Scherk* noted "an agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum selection clause that posits not only the situs of the suit but also the procedure to be used in resolving the dispute."  *Scherk,* 417 U.S. at 519.  Policy favoring arbitration clauses is so strong in international commercial agreements they are enforced "even assuming that a contrary result would be forthcoming in a domestic context."  *Mitsubishi*, 473 U.S. at 629; *accord Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265 (1995).

The Fifth Circuit has been especially consistent in upholding such arbitration clauses.  As this Court has noted:

> To say that it is the public policy of the United States and the Fifth Circuit to enforce contractually agreed-upon arbitration provisions would be an understatement.  It is hard to imagine a topic in recent years in which the Fifth Circuit has written more frequently and more consistently.  Its statements are clear and concise.  If there is an agreement in writing to arbitrate, it is the public policy of the federal courts to enforce that provision.

*Ensco Offshore Co. v. Titan Marine LLC*, 370 F. Supp. 2d 594, 597 (S.D. Tex. 2005) (citing *Walton v. Rose Mobile Homes LLC*, 298 F.3d 470, 473 (5th Cir. 2002)).  In yet another case upholding of the Convention, this Court noted:

> Once a court determines an agreement to arbitrate exists, it must give careful attention to the strong federal policy favoring arbitration **and must resolve all ambiguities in favor of arbitration**.

*Galtney v. KPMG LLP,* No. H-05-583, 2005 WL 1214613, at *3 (S.D. Tex. May 19, 2005) (Werlein, J.) (relying on the Convention in a situation involving two American citizens, the court compelled arbitration, citing *Bank One v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004)) (emphasis added).

**B.     The Court Should Compel Arbitration because the Agreement Meets the Four Determining Factors Required by the Convention Act**

Section 202 of the Convention Act explains when an arbitration agreement falls under the Convention:

> An arbitration agreement or arbital award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention.

9 U.S.C. § 202.  Thus, before a court can compel arbitration under the Convention Act, the party seeking to enforce the arbitration agreement must first show:  (1) the agreement to arbitrate the dispute is in writing; (2) the agreement provides for arbitration in the territory of a Convention signatory; and (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen.  *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004); *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 273 (5th Cir. 2002); *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.,* 767 F.2d 1140, 1146 (5th Cir. 1985); *Ledee v. Ceramiche Ragno*, 684 F.2d 184, 185-86 (1st Cir. 1982).  A review of the four

factors used to decide a motion to compel arbitration indicates that Plaintiff's claims are subject to mandatory arbitration.

## C.     There is a Written Agreement to Arbitrate Plaintiff's Claims in the Marlow CBA

Taking as true Plaintiff's admission that Marlow employed Plaintiff at the time of the incident, there is a written agreement to arbitrate Plaintiff's claims in the Marlow CBA. Determining whether the parties agreed to arbitrate their disputes requires the consideration of two questions:  "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996).  In other words, "[e]nforcement of an arbitration agreement involves two analytical steps.  The first is contract formation—whether the parties entered into *any arbitration agreement at all.*  The second involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement." *Kubala v. Supreme Production Services, Inc.*, 830 F.3d 199, 201 (5th Cir. 2016).

In answering these questions, the Court should apply "ordinary state–law principles that govern the formation of contracts." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  But the Court must also honor the federal policy favoring arbitration and resolve any ambiguities as to the scope of the clause itself for arbitration.  *Id.*

### 1.     Plaintiff, through his union, entered into a written contract with Marlow which contains an arbitral clause.

Under the Convention, an arbitration "agreement in writing," means "an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams."  New York Convention, art. II (1), (2); *Sphere Drake Ins. PLC v. Marine Towing, Inc.*, 16 F.3d 666, 669 (5th Cir. 1994).  Here, Marlow and Plaintiff's Union entered into a CBA "to

regulate conditions of employment of Ukrainian seafarers who are employed by [Marlow] to serve on board foreign flag vessels."[12]  Plaintiff, admittedly a Ukrainian seafarer,[13] alleges that Marlow employed him[14] aboard the foreign flagged *M/V BBC Amisia*[15] at the time of the incident.  Thus, the Marlow CBA regulated Plaintiff's employment.

Article 29 of the Marlow CBA is entitled "Disputes and Arbitrations."[16]  Article 29.2(c) mandates that unsettled disputes between Plaintiff and Marlow shall be referred to a Cyprus court of arbitration.  Article 29 is best reviewed as a group of provisions:

**Article 29: Disputes and Arbitration**

29.1 For any disputes a Seafarer is compelled to approach the Union, which will in turn endeavor to settle the dispute directly with the Company.

29.2
a) This agreement shall be subject to ***Cyprus Law*** and international conventions, treaties and covenants wherein ***Cyprus*** is a signatory.

b) The Contracting Parties shall discuss and negotiate amicably settlement of any situations and/or differences that may arise.

c) In the event that the Contracting Parties are unable to reach an agreement, the dispute shall be referred to the ***Cyprus Courts.***

d) Any award rendered by the arbitrators shall be final and binding on the Contracting Parties.[17]

In interpreting article 29, the Court's "primary concern is to ascertain and give effect to the true intentions of the parties as expressed in the agreement."  *El Paso Field Sers., L.P. v. MasTec*

---

[12]   Ex. 2, Marlow CBA.

[13]   Dkt. 1-2, Pl.'s Orig. Pet. at ¶ 3 ("Plaintiff, SERGIY GUMENYUK, is a Jones Act seaman working aboard commercial vessels, calling on various ports within the United States, but is a permanent resident of the Ukraine.")

[14]   Plaintiff alleges in his Original Petition that he was employed by Defendant Marlow on the date of the incident, November 16, 2016.  Dkt. 1-2, Pl.'s Orig. Pet. at ¶ 7 ("employed by Defendants"; "Defendants individually and/or collectively employed the Plaintiff as a Jones Act seaman").

[15]   Ex. 3, Schiffahrts/Marlow Standard Crew Hire Contract ("Antigua & Barbuda flag").

[16]   Ex. 2, Marlow CBA at art. 29.

[17]   Ex. 2, Marlow CBA at art. 29.

*N. Am., Inc*., 389 S.W.3d 802, 805 (Tex. 2012).  This means that the Court should construe article 29 from a utilitarian standpoint, bearing in mind the particular business activity sought to be served by the parties.  *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987).  Here, Marlow, a Cypriot company, crews foreign vessels with Ukrainian seafarers.  Rather than subjecting itself to litigation in any port where the vessels sail, Marlow has bargained for arbitration in one convenient forum in its own back yard.  In establishing a federal policy favoring arbitration in international commerce, the Supreme Court has recognized that "it is typically a desire to keep the effort and expense required to resolve a dispute within manageable bounds that prompts [contracting parties] mutually to forgo access to judicial remedies." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625, 633 (1985).

The reference to "Cyprus Courts" in article 29.2(c) clearly refers to a private court of arbitration, rather than a public court of law before a judge or jury.  Common sense dictates such an interpretation where the section is entitled "Disputes and Arbitration" and where article 29.2(d) follows up with the unmistakable command that "[a]ny award rendered by the arbitrators shall be final and binding."[18]  "[C]ourts will not construe a contract to mean that the parties have agreed to act contrary to what common sense and the circumstances obviously demand, unless the contract is explicit and clear in that meaning."  *Parks v. Frankfurt*, 476 S.W.2d 717 (Tex. Civ. App.—Beaumont 1972, writ ref'd n.r.e.); *Fujimoto v. Rio Grande Pickle Co*., 414 F.2d 648 (5th Cir. 1969).  Finding otherwise would render the title of the section, and article 29.2(d), meaningless.  "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument."  *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).

---

[18]      Ex. 2, Marlow CBA at art. 29, 29.2(d) (emphasis added).

Further, many arbitral bodies call themselves courts. For instance, the International Chamber of Commerce ("ICC") refers to its "International Court of Arbitration" as the world's leading arbitral institution.[19] Others include the European Court of Arbitration,[20] the Permanent Court of Arbitration,[21] the Court of Arbitration for Sport,[22] the London Court of International Arbitration,[23] the Court of Arbitration for Art.[24] Even closer to home, so to speak, is the governing body of the Cyprus Eurasia Dispute Resolution and Arbitration Center ("CEDRAC")[25] called the CEDRAC Court. It is easy to see why the CBA refers to "Cyprus Courts" when the clause is about arbitration.

2. **Plaintiff's claims in this lawsuit fall within the scope of the arbitration clause in the Marlow CBA.**

Having established that Marlow and Plaintiff contracted to arbitrate, the Court must next decide whether Plaintiff's claims fall within the scope of the arbitration provision. The Court should not deny arbitration "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co.*, 767 F.2d 1140, 1145 (5th Cir. 1985) (quotations omitted); *see also AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650 (1986).

Here, article 29 contains a broadly drafted arbitration clause that purports to cover all disputes between Plaintiff and Marlow. Article 29.1 states: "For <u>any disputes</u> a Seafarer is

---

[19]    International Court of Arbitration, https://iccwbo.org/dispute-resolution-services/icc-international-court-arbitration/ (last visited July 6, 2020).

[20]    European Court of Arbitration, https://cour-europe-arbitrage.org/mission/ (last visited July 6, 2020).

[21]    Permanent Court of Arbitration, https://pca-cpa.org/en/services/arbitration-services/ (last visited July 6, 2020).

[22]    Court of Arbitration for Sport, https://www.tas-cas.org/en/ (last visited July 6, 2020).

[23]    London Court of International Arbitration, https://www.lcia.org/ (last visited July 6, 2020).

[24]    Court of Arbitration for Art, https://www.cafa.world/ (last visited July 6, 2020).

[25]    Cyprus Eurasia Dispute Resolution and Arbitration Center, http://www.cedrac.org (last visited July 6, 2020).

compelled to approach the Union, which will in turn endeavor to settle the dispute directly with the Company."[26]   Article 29.2(c) continues:  "In the event that the Contracting Parties are unable to reach an agreement, the dispute shall be referred to the **Cyprus Courts**."[27]   Thus, Article 29.2(c)'s mandate that the "dispute" shall be referred to arbitration relates back to article 29.1's discussion of "any disputes" Plaintiff has with Marlow.

It is difficult to contemplate any arbitration clause more broad than this one in the CBA. The parties contemplated that any dispute arising as between Marlow and Plaintiff would be subject to arbitration.

**D.     The Arbitration Agreement Provides for Arbitration in the Territory of a Convention Signatory**

The Marlow CBA provides for arbitration in Cyrpus, a country that is a signatory to the Convention:  "In the event that the Contracting Parties are unable to reach an agreement, the dispute shall be referred to the **Cyprus Courts**."   Art. 29.2(c).   Cyprus is a signatory to the Convention.   Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 7, 1959, 330 U.N.T.S. 3, http://www.newyorkconvention.org/countries (last visited July 1, 2020). Thus, the second criterion is fulfilled.

**E.     The Agreement Arises Out of a Seaman's Employment which is a Commercial Legal Relationship**

As to the third requirement, the courts have consistently held that a seaman's employment agreement represents a commercial relationship.  *See, e.g., Bautista v. Star Cruises*, 396 F.3d 1289, 1299 (11th Cir. 2005); *Francisco v. Stolt Achievement MT,* 293 F.3d 270, 274 (5th Cir. 2002).  The Federal Arbitration Act enforces arbitration clauses in "any maritime transaction," but specifically excludes "contracts of employment of seamen."  9 U.S.C. §§ 1, 2. *In contrast*, when a seaman's

---

[26]     Ex. 2, Marlow CBA at art. 29.1 (emphasis added).
[27]     Ex. 2, Marlow CBA at art. 29.2(c) (emphasis added).

contract falls under the Convention pursuant to the requirements set out in section 202 of the Convention Act, the Fifth Circuit has held the exception does *not* apply, and arbitration is mandatory under the Convention. *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 340 (5th Cir. 2004). When an international arbitration clause falls under the Convention, the "Convention requires district courts to order arbitration." *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.,* 767 F.2d 1140, 1145 (5th Cir. 1985); *see also* 9 U.S.C. § 201 ("the Convention . . . shall be enforced in United States courts").

**F.      Neither Plaintiff, Marlow, nor the Union are American Citizens**

Finally, the fourth factor this Court must consider in deciding whether to compel arbitration is whether a party to the agreement is not an American citizen. According to Plaintiff's own lawsuit, Gumenyuk is a permanent resident of the Ukraine. Dkt. 1-2, Pl.'s Orig. Pet. at ¶ 3. Thus, the fourth factor compelling arbitration is satisfied.

## VI.
## CONCLUSION

Fifth Circuit precedent mandates the enforcement of the arbitration clause found in the Marlow CBA. The Union, on Plaintiff's behalf, agreed that Plaintiff and Marlow would arbitrate "any disputes" in a Cyprus court of arbitration. Because Cyprus is a signatory to the Convention, the CBA governs a commercial relationship, and Plaintiff is not an American citizen, the public policy of the United States, and the Fifth Circuit in particular, is to enforce this contractually agreed-upon arbitration provision and this Court, "must resolve all ambiguities in favor of arbitration." *Galtney v. KPMG LLP,* No. H-05-583, 2005 WL 1214613, at *3 (S.D. Tex. May 19, 2005) (Werlein, J.).

BASED UPON THE FOREGOING, Defendant Marlow Navigation Company, Ltd. moves this Court to (1) compel Plaintiff Gumenyuk to arbitrate in Cyprus; and (2) stay this action pending arbitration.

Respectfully submitted,

**HOLMAN FENWICK WILLAN USA LLP**

*/s/ Jeanie Tate Goodwin*
Michael J. Wray
TBA 24052191, SDTX 381651
Michael.Wray@hfw.com
5151 San Felipe, Suite 400
Houston, Texas 77056
Telephone: (713) 917-0888
Facsimile: (713) 953-9470
**ATTORNEY-IN-CHARGE FOR DEFENDANT
MARLOW NAVIGATION COMPANY, LTD.**

**OF COUNSEL:**
**Holman Fenwick Willan USA LLP**
Jeanie Tate Goodwin
Jeanie.Goodwin@hfw.com
TBA 24046949, SDTX 592456

## CERTIFICATE OF CONFERENCE

I exchanged emails with Plaintiff's counsel, Chip Herd, on July 8, 2020.  Plaintiff is opposed to the relief sought in this motion.

*/s/ Jeanie Goodwin*
Jeanie Tate Goodwin

## CERTIFICATE OF SERVICE

A copy of the foregoing was served ECF on 10th day of July 2020:

Charles F. Herd, Jr.
HERD LAW FIRM, PLLC
19500 Tomball Parkway, Suite 250
Houston, Texas 77070

14

Tarryn E. Walsh
MURPHY, ROGERS, SLOSS, GAMBEL & TOMPKINS
701 Poydras St., Suite 400
New Orleans, LA 70139

*/s/ Jeanie Goodwin*
Jeanie Tate Goodwin
