**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **SERGIY GUMENYUK,** | * | |
| **Plaintiff,** | * | |
| | * | |
| **VS.** | * | |
| | * | |
| **MARLOW NAVIGATION** | * | **CAUSE NO. 4:20:cv-00285** |
| **COMPANY, LTD, JANS HS** | * | |
| **SCHIFFAHRTS GMBH and HS** | * | |
| **SCHIFFAHRTS GMBH & CO KG.,** | * | |
| **Defendants.** | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## <u>DEFENDANT SCHIFFAHRTS' MOTION TO COMPEL ARBITRATION</u>

Respectfully submitted,

**MURPHY, ROGERS, SLOSS,
  GAMBEL & TOMPKINS**

*/s/ Peter B. Tompkins*
Peter B. Tompkins (*pro hac vice*)
ptompkins@mrsnola.com
Tarryn E. Walsh
S.D. Tex. No. 3514872, Tex. Bar No. 24117884
twalsh@mrsnola.com
701 Poydras St., Suite 400
New Orleans, LA  70139
Telephone 504.523.0400
***Attorneys for***
***HS Schiffahrts GmbH & Co. KG MS "Jan"***

## Table of Contents

Table of Contents ..................................................................................................... ii

Table of Authorities ................................................................................................ iii

Schiffahrts' Opposed Motion to Compel Arbitration ........................................... 1

Nature and Stage of the Proceedings .................................................................... 1

Statement of the Issues .......................................................................................... 2

Summary of the Argument ..................................................................................... 2

Factual Background ................................................................................................ 3

Law and Analysis .................................................................................................. 6

    *I.    Applicable Legal Standards* ........................................................................ 6

    *II.    The Convention on the Recognition and Enforcement of Foreign Arbitral Awards requires that the present matter be arbitrated.* ............................................... 7

    *III.    Schiffahrts is entitled to enforce the arbitration clause along with Marlow under the Fifth Circuit's "intertwined claims" doctrine, warranting that plaintiff be compelled to arbitrate his claims against both defendants.* ....................... 9

    *IV.    Alternatively, Schiffahrts is entitled to a stay of the present litigation pending arbitration.* ..................................................................................... 15

Conclusion ........................................................................................................... 17

Certificate of Conference .................................................................................... 18

Certificate of Service .......................................................................................... 18

## Table of Authorities

**Cases**

*Brown v. Pacific Life Ins. Co.*, 462 F.3d 384 (5th Cir. 2006).................................................. 14

*Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294 (5th Cir. 2004).............................. 7

*Fin & Feather Chalets, LLC v. Southern Energy Homes, Inc.*, Civ. A. No. 13-6082, 2014 U.S. Dist. LEXIS 124767 (E.D. La. Sept. 2, 2014).............................................. 11, 14, 16

*Francisco v. Stolt Achievement MT*, 293 F.3d 270 (5th Cir. 2002)............................. 3, 6, 8, 9

*Freudensprung v. Offshore Tech. Servs. Inc.*, 379 F.3d 327 (5th Cir. 2004) .......................... 7

*GE Energy Power Conversion Fr. SAS v. Outokumpu Stainless USA, LLC*, 140 S.Ct. 1637 (2020).................................................................................................................. 7, 9, 10

*Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir. 2000) ..................... passim

*Harvey v. Joyce*, 199 F.3d 790 (5th Cir. 2000)........................................................................ 16

*Hill v. G.E. Power Systems, Inc.*, 282 F.3d 343 (5th Cir. 2002)............................................. 17

*Int'l Paper Co. v. Schwabedissen Maschinen & Anglagen GMBH*, 206 F.3d 411 (4th Cir. 2000) ........................................................................................................................ 15

*Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898 (5th Cir. 2005) ..................... 3, 7, 8

*Llagas v. Sealift Holdings,* Civ. A. No. 17-CV-00472, 2018 U.S. Dist. LEXIS 237529 (W.D. La. Jul. 27, 2018) ...................................................................................... 10, 12, 13

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) ....................................................... 7

*Pagadun v. Carnival Corp.*, 709 F.App'x 713 (2d Cir. 2017) ............................................... 13

*Psara Energy, Ltd. v. Space Shipping, Ltd.*, 427 F.Supp.3d 858 (E.D. Tex. 2019) ........ passim

*Scherk v. Alberto-Culver Co.*, 417 U.S. 506 (1974) ................................................................. 8

*Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co.*, 767 F.2d 1140 (5th Cir. 1985)..... 8

*Simon v. Princess Cruise Lines, Ltd.*, No. G-13-0444, 2014 U.S. Dist. LEXIS 202877 (S.D. Tex. May 19, 2014)........................................................................................................ 9

*Todd v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.*, 601 F.3d 329 (5th Cir. 2010).. 2

*Waste Mgmt. v. Residuos Industriales Multiquim, S.A.*, 372 F.3d 339 (5th Cir. 2004)...... 2, 16

**Statutes**

9 U.S.C. §201 *et seq.* ........................................................................... 2, 7, 18

9 U.S.C. §205 ......................................................................................... 1, 6

9 U.S.C. §3 ............................................................................................ 15

## Schiffahrts' Opposed Motion to Compel Arbitration

Defendant, HS Schiffahrts GmbH & Co. KG MS "Jan" (hereinafter referred to as "Schiffahrts"), moves this Court to compel plaintiff to arbitrate under the terms of his employment agreement with co-defendant, Marlow Navigation Company, Ltd. (hereinafter referred to as "Marlow").  In so moving, Schiffahrts joins in Marlow's motion to compel and adopts its co-defendant's arguments in support (R. Doc. 18), and presents to the Court in this memorandum that the subject arbitration provision extends to Schiffahrts.  In short, the pertinent Supreme Court and Fifth Circuit jurisprudence directs that the claims brought by plaintiff, Sergiy Gumenyuk, against both defendants are intertwined to such an extent that Schiffahrts, a non-signatory, is entitled to compel arbitration as well.

As explained in detail below, the facts here in tandem with the relevant jurisprudence warrant this Honorable Court compelling plaintiff to arbitrate his claims against both Marlow and Schiffahrts, in accordance with the terms of his employment. Alternatively, Schiffahrts is entitled to a stay of the present litigation, pending arbitration.[1]

## Nature and Stage of the Proceedings

On 22 October 2019, plaintiff filed suit in Harris County District Court alleging personal injuries to his left arm and hand and seeking recovery for Jones Act negligence, unseaworthiness and maintenance and cure.[2]  Co-defendant Marlow removed the action to this Honorable Court on 24 January 2020, with 9 U.S.C. §205 serving as the basis for removal of this lawsuit whose subject relates to an arbitration agreement falling under the

---

[1] Schiffahrts specifically reserves any and all defenses available to it under Rule 12 of the Federal Rules of Civil Procedure, as well as all arguments that U.S. law does not apply to plaintiff's claims here.
[2] R. Doc. 1-2.

1

New York Convention.[3]  Plaintiff subsequently filed a Motion to Remand on 1 February

2020, which this Court denied on 6 May 2020.[4] Schiffahrts now requests that the Court

compel arbitration of plaintiff's claims, pursuant to the Seafarer's Employment Agreement

entered into between plaintiff and his employer.

## Statement of the Issues

The issues presented by this motion are three-fold: first, whether the arbitration clause

in Marlow's collective bargaining agreement with plaintiff's Union requires plaintiff to

arbitrate his claims in Cyprus, under 9 U.S.C. §201 *et seq.*; second, whether Schiffahrts can

enforce said arbitration clause as a non-signatory under Fifth Circuit precedent of *Grigson v.*

*Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir. 2000); and third, in the event this

Court decides Schiffahrts cannot enforce the clause but Marlow can, whether Schiffahrts is

entitled to a stay of the litigation pending Marlow's arbitration, due to the inherently

inseparable nature of the claims to be arbitrated and litigated.  *See, e.g.*, *Waste Mgmt. v.*

*Residuos Industriales Multiquim, S.A.*, 372 F.3d 339 (5th Cir. 2004).  The appellate court

reviews de novo both the denial of a motion to compel arbitration under the Convention and

the denial of a motion to stay litigation pending arbitration.  *Todd v. Steamship Mut.*

*Underwriting Ass'n (Bermuda) Ltd.*, 601 F.3d 329, 331-32 (5th Cir. 2010); *Waste Mgmt.,*

*supra.*

## Summary of the Argument

United States federal courts, and particularly the Fifth Circuit, have repeatedly

enforced arbitration provisions that are encompassed within the terms and conditions of a

---

[3] R. Doc. 1.
[4] R. Docs. 3 and 14.

seaman's employment.  *See, e.g.*, *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 905-06 (5th Cir. 2005); *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 274-75 (5th Cir. 2002).  As explained in detail in Marlow's motion, the arguments for which Schiffahrts joins and adopts, the arbitration clause in the Marlow CBA that calls for arbitration in Cyprus constitutes a term of plaintiff's employment and must be enforced under the governing law.

Fifth Circuit precedent, specifically *Grigson* and its progeny, also allows non-signatory Schiffahrts to enforce the referenced arbitration provision with respect to plaintiff's claims, under the doctrine of equitable estoppel.  Plaintiff's claims against Schiffahrts are grounded in his employment, and he alleges the same damages from both defendants without distinguishing their alleged conduct. As such, the Fifth Circuit's "intertwined claims" doctrine applies here, warranting enforcement of the clause for plaintiff's claims against Schiffahrts as well.  Lastly, in the event the Court orders arbitration only against Marlow, Schiffahrts is entitled to a stay of the litigation pending arbitration, as plaintiff's claims against Schiffharts are inseparable from those against Marlow.

## **Factual Background**[5]

At all pertinent times, Schiffahrts was the owner of the M/V BBC AMISIA, IMO No. 9267297.[6]  Beginning in 2013, Schiffahrts contracted with Marlow for crew managing services on the BBC AMISIA, by virtue of a "Standard Crew Hire Contract."[7] Schiffharts is a German shipowner, while Marlow is a third party ship and crew management company based in Limassol, Cyprus.[8]

---

[5] Schiffahrts adopts Marlow's recitation of the facts relating to the subject litigation (R. Doc. 18, pp. 8-11), and simply highlights some of the pertinent facts here.
[6] R. Doc. 18-4.
[7] R. Doc. 18-4.
[8] See R. Doc. 18.

On or about 27 October 2016, plaintiff, who is a resident of Ukraine and Ukrainian seaman, signed a Seafarer's Employment Agreement ("S.E.A.") for employment on the BBC AMISIA as Chief Officer for a four-month period.[9] As seen in the excerpt reprinted below, the S.E.A. states the following in the space directly above his signature:



Plaintiff's S.E.A. for his voyage on the BBC AMISIA thus expressly incorporates the terms and conditions of the collective bargaining agreement entered "between the Black Sea Seamen's Trade Union and the employer," which is Marlow for the purpose of this motion.[10] Also of note, the Crew Hire Contract between Schiffahrts and Marlow incorporates the terms of the individual seafarer's S.E.A., which in turn incorporates the collectively-bargained terms referenced above.

On the date of plaintiff's injury described herein, a collective bargaining agreement was in effect between Marlow and the Black Sea Seamen's Trade Union with respect to the Ukrainian seafarers that crewed Marlow-operated vessels (hereinafter referred to as the

---

[9] See Seaman's Employment Agreement, attached hereto as Exhibit A.
[10] See R. Doc. 18. Marlow denies that it is plaintiff's employer, but deems plaintiff's judicial admission as true for the purpose of this motion.

"Marlow CBA").[11]  The Marlow CBA expressly incorporates its terms and conditions into the terms and conditions of employment of any Ukrainian seafarer serving on a Marlow-manned vessel, and sets out that the CBA's terms cover each seafarer and Marlow.[12]  Of note, the Marlow CBA sets forth that the ship's crew will be performing "Cargo Work," which is precisely what plaintiff alleges was ongoing at the time of his injury, and also sets forth other terms benefitting the seafarers such as hours of duty, wages, overtime pay and holidays.[13]

On or about 16 November 2016, while the BBC AMISIA was berthed at the Port of Houston, plaintiff alleges he was injured during cargo operations, specifically when assisting with closing the hatch covers at the completion of loading.[14] He alleges an injury to his left arm, for which he was treated in Houston.[15]

Subsequent to his injury, plaintiff benefitted from a variety of the CBA terms that protect the Ukrainian seafarers in the event of an injury. Specifically, Article 19 covers seafarers who suffer any permanent disability due to a work-related accident, and sets forth a sliding scale of compensation that accounts for the percentage of disability against the established maximum amount of compensation.[16]

In or around August 2017, plaintiff utilized Article 19's terms and accepted compensation in accordance with the disability schedule in exchange for a release of all claims against, *inter alia*, "the Owners, Managers, Operators, Charterers" of the BBC

---

[11] R. Doc. 18-3.
[12] R. Doc. 18-3, ¶1.1-1.5.
[13] R. Doc. 18-3, generally and specifically ¶4.1-4.3 ("Cargo Work").
[14] R. Doc. 1-2.
[15] R. Doc. 1-2.
[16] R. Doc. 18-3, ¶19.1 and 19.2.

AMISIA.[17] Notably, Article 19.3 makes clear that a payment effected under Article 19.1 "shall be regarded as a final and total settlement of the case."[18]

Plaintiff filed the present lawsuit on 22 October 2019 in the district court of Harris County, Texas.[19]  Due to Article 29 of the Marlow CBA, Marlow subsequently removed the matter to this Court on the basis of 9 U.S.C. §205.[20]  Entitled "Disputes and Arbitration," that Article requires that any disputes are subject to Cyprus law and to arbitration in Cyprus.[21] The present motions of Marlow and Schiffahrts now follow, to compel plaintiff to arbitrate his claims against both entities in accordance with the clear terms of his employment agreement.

## Law and Analysis

### I.      Applicable Legal Standards

The jurisprudence pertinent to a motion to compel arbitration resoundingly reflects the emphatic federal policy in favor of arbitration, and it also recognizes that any doubts with respect to the arbitrability of a dispute must be resolved in favor of arbitration.  *See, e.g.*, *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 274-75 (5th Cir. 2002). Particularly applicable here as the contractual relationships involved are of the international variety, the Fifth Circuit also reminded in *Francisco, supra*, that "the federal policy favoring arbitration 'applies with special force in the field of international commerce.'"  *Id.* at 275.

---

[17] R. Doc. 18-3, ¶19.1; R. Doc. 18-5.
[18] R. Doc. 18-3, ¶19.3.
[19] See R. Doc. 1-2.
[20] R. Doc. 1.
[21] R. Doc. 18-3.

Specific to agreements falling under the Convention (which this one does, as discussed below), "Article II(3) states that 'the court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, **shall, at the request of one of the parties, refer the parties to arbitration,** unless it finds that the said agreement is null and void, inoperative or incapable of being performed.'" *GE Energy Power Conversion Fr. SAS v. Outokumpu Stainless USA, LLC*, 140 S.Ct. 1637 at *11 (2020) (emphasis added).  Thus, when the Convention provides the basis for compelling arbitration, "courts conduct only a very limited inquiry," and must compel arbitration unless it makes the aforementioned finding that the agreement is null and void. *Psara Energy, Ltd. v. Space Shipping, Ltd.*, 427 F.Supp.3d 858, 861 (E.D. Tex. 2019) (citing *Freudensprung v. Offshore Tech. Servs. Inc.*, 379 F.3d 327, 339 (5th Cir. 2004)).

The Fifth Circuit has emphasized that "a party opposing, on public policy grounds, enforcement of an international arbitration clause must meet a 'heavy burden of proof.'" *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 905-06 (5th Cir. 2005) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17 (1972)).  "There is a strong presumption in favor of arbitration and a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity."  *Id.* (quoting *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004)).

## II.     The Convention on the Recognition and Enforcement of Foreign Arbitral Awards requires that the present matter be arbitrated.

Congress has implemented the Convention on the Recognition and Enforcement of Foreign Arbitral Awards in 9 U.S.C. §201 *et seq*., "and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and

7

enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed… ." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974).

"If an international arbitration clause falls under the Convention Act, 'the Convention requires district courts to order arbitration.'" *Lim*, 404 F.3d at 903 (quoting *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co.*, 767 F.2d 1140, 1145 (5th Cir. 1985) and citing also 9 U.S.C. § 201 ("The Convention … shall be enforced in United States courts ….")). An international arbitration clause falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards when four (4) elements are met:

   1) there is an agreement in writing to arbitrate the dispute,

   (2) the agreement provides for arbitration in the territory of a Convention signatory,

   (3) the agreement arises out of a commercial legal relationship, and

   (4) a party to the agreement is not an American citizen.

*Id.*; *see also Francisco,* 293 F.3d at 272-73.

Schiffahrts adopts and incorporates by reference Marlow's arguments and thorough analysis on this topic.[22] As set forth in detail in Marlow's companion motion, the present arbitration clause falls under the Convention and thus requires this Court to order arbitration. First, the Marlow CBA constitutes "an agreement in writing" and contains an express arbitration clause.  Second, the agreement calls for arbitration in Cyprus, which is a signatory to the Convention.  Third, the agreement arises out of plaintiff's employment, which the Fifth Circuit has held constitutes a "commercial legal relationship" for this exact inquiry.

---

[22] R. Doc. 18.

*Francisco, supra*; *see also, e.g.*, *Simon v. Princess Cruise Lines, Ltd.*, No. G-13-0444, 2014 U.S. Dist. LEXIS 202877, at *5 (S.D. Tex. May 19, 2014) ("… courts, including the Fifth Circuit, have held that a seaman employment contract arises out of a commercial legal relationship to which the Convention applies.").  Lastly, neither of the parties to the CBA and employment terms at issue are American citizens – Marlow is a Cypriot company, the Black Sea Seamen's Trade Union is a Ukrainian entity, and plaintiff is a Ukrainian citizen.  And to the extent plaintiff claims that the reference to "Cyprus Courts" in Article 29 somehow negates the clear arbitration provision, Marlow details in its motion that international arbitral bodies often refer to themselves as "courts," which aligns with the intent of the provision to require arbitration.[23] All four (4) elements are therefore met for this matter.

Thus, as explained thoroughly in Marlow's motion and the arguments adopted therefrom, arbitration of this matter is required under the Convention.

### III.     *Schiffahrts is entitled to enforce the arbitration clause along with Marlow under the Fifth Circuit's "intertwined claims" doctrine, warranting that plaintiff be compelled to arbitrate his claims against both defendants.*

In June of 2020, the U.S. Supreme Court confronted the question of whether the Convention allowed a non-signatory to enforce an arbitration provision using domestic contract law principles, and unanimously answered that question in the affirmative.  *GE Energy Power Conversion Fr. SAS, supra* at *12-15.  The Court specifically examined whether the Convention conflicted with domestic contract principles like equitable estoppel, and found that nothing in the statutory or treaty text, nor in the drafting history, "suggests that the Convention sought to prevent contracting states from applying domestic law that

---

[23] R. Doc. 18, pp. 17-18.

9

permits nonsignatories to enforce arbitration agreements[.]" *Id.* at *12-14. Therefore, as detailed below, the governing Fifth Circuit law allows Schiffahrts to enforce the arbitration provision at issue under the Convention as a non-signatory, on the basis of equitable estoppel and the "intertwined claims" doctrine. *See, e.g.*, *Psara Energy*, 427 F.Supp.3d at 861.

In *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir. 2000), the Fifth Circuit established that a non-signatory could enforce an arbitration provision under the state law contract principle of equitable estoppel, and embraced what is known in this arena as the "intertwined claims" doctrine. *Id.* at 527-31. Looking to persuasive Eleventh Circuit opinions on the topic, the court held that the non-signatory could compel arbitration where "[t]he claims are intertwined with, and dependent upon, the distribution agreement, including, but *not* limited to, Defendants (non-signatories) and TriStar (non-defendant signatory) being charged with interdependent and concerted misconduct." *Id.* at 527, 531. The court's holding is often characterized as a fact-dependent, two-part inquiry for compelling arbitration against a non-signatory, in that the doctrine of equitable estoppel applies where "1) the signatory to a written agreement containing an arbitration clause relies on the terms of the written agreement to assert claims against the non-signatory, and 2) these allegations raise substantially interdependent and concerted misconduct by both the non-signatory and the signatories to the contract." *Psara Energy, supra* at 865. The outcome of the *Grigson* decision has been utilized by district courts throughout the Circuit to extend an arbitration provision to a non-signatory under circumstances where claims against multiple defendants are intertwined in such a way that equity and fairness principles merit a non-signatory's enforcement. *Id*. at 528; *see Psara Energy, supra*; *Llagas v. Sealift Holdings*, Civ. A. No. 17-CV-00472, 2018 U.S. Dist. LEXIS 237529 (W.D. La. Jul. 27, 2018); *Fin &*

*Feather Chalets, LLC v. Southern Energy Homes, Inc.*, Civ. A. No. 13-6082, 2014 U.S. Dist. LEXIS 124767, *43-44 (E.D. La. Sept. 2, 2014).

Relying largely on *Grigson* and cases cited therein, the Eastern District of Texas in *Psara Energy, supra*, found that a defendant non-signatory could take advantage of a charter party's international arbitration clause under the Convention.  427 F.Supp.3d at 866. Notably, because it possessed admiralty jurisdiction over the case, the court applied federal law to this procedural question and summarized the "intertwined claims doctrine" as allowing "a non-signatory [to] compel arbitration when the claims factually relate to the interpretation and performance of the agreement and are inextricably intertwined with its claims."  *Id.* at 865 (quotation omitted).

The court found that not only did the plaintiff's complaint presume and rely on the charter party and its terms, but the complaint also "treat[ed] the Advantage Defendants, Space Shipping, and Geden Holdings as a single unit in its pleadings and raise[d] virtually indistinguishable factual allegations from which to seek relief."  *Id.* at 866.  Reinforcing the focus of the inquiry, the court went on to reason that "[t]he interchangeable nature of the Defendants, particularly after Psara explains at length the interconnected nature of the parties, raises allegations of 'substantially interdependent and concerted misconduct by both the non-signatory and the signatories to the contract.'" *Id.* (citing *Grigson, supra*).  The court ultimately held that "the [non-signatory] Defendants can compel arbitration despite the fact that they did not sign the charter party requiring the arbitration of any dispute."  *Id.* at 867.

Likewise here, plaintiff's employment on the vessel forms the basis of his claim for relief, implicitly triggering the terms and conditions of his employment.  Without his employment on the BBC AMISIA in November 2016, plaintiff would have no maritime

11

claim against Schiffahrts (or Marlow, for that matter).[24]  *See Psara Energy, supra*. Further, the terms of the CBA reflect its connection to plaintiff's claims.  His signed contract for the voyage during which he was injured expressly incorporates the terms of the Marlow CBA, and immediately preceding his signature states – "Terms and Conditions: As per collective bargain agreement (BLACK SEA SEAMEN'S TRADE UNION CBA) between the Black Sea Seamen's Trade Union and the employer."[25]  As such, plaintiff is a signatory to the arbitration agreement.  The Marlow CBA also expressly incorporates the CBA terms into the employment agreement of all Ukrainian seafarers serving on Marlow-operated vessels.[26] Moreover, the Marlow CBA addresses the type of work that the Ukrainian seafarers were expected to perform on any Marlow-operated vessel on which they were employed, and the CBA sets forth that the seafarers employed by Marlow would be performing "Cargo work," which is the vessel operation that is at the root of plaintiff's claims in this action.[27]

The scenario here parallels the body of caselaw addressing the arbitration clauses in the terms of employment for Filipino seamen.  For example, in *Llagas, supra*, the court was examining whether plaintiff's employer – a non-signatory to the POEA [Philippines Overseas Employment Administration] terms that governed his employment – could enforce the arbitration clause contained within those terms and conditions.  2018 U.S. Dist. LEXIS 237529, at *10-12.  Relying on several cases from the Fifth Circuit and courts within (including *Grigson*), the *Llagas* court answered that inquiry affirmatively, holding that the

---

[24] Schiffahrts and Marlow maintain that the Jones Act and/or U.S. law do not apply to plaintiff either under a choice-of-law analysis and/or because the employment contract calls for the application of the laws of Cyprus to any disputes arising out of plaintiff's employment. See R. Doc. 16.
[25] Exhibit A hereto.
[26] R. Doc. 18-3, ¶1.1 and 1.2.
[27] R. Doc. 18-3, ¶4.

non-signatory employer/vessel owner could take advantage of the arbitration clause because plaintiff's personal injury claim stemmed out of his employment on the vessel. *Id.* at *12. In arriving at that conclusion, the court reasoned that "[b]ecause plaintiff seeks to recover unpaid wages from defendants arising out of his employment on their vessels, he cannot at the same time avoid his contractual obligations due to their status as nonsignatories." *Id.* Reinforcing that a seafarer's employment agreement can incorporate terms from other documents, the court pointed out that the contract "clearly and unambiguously describe[d] the documents… whose terms would apply." *Id.* (citing *Pagadun v. Carnival Corp.*, 709 F.App'x 713, 716 (2d Cir. 2017)). Similarly here, plaintiff's signed employment contract clearly and unambiguously incorporated the terms of the Marlow CBA. Plaintiff's employment, governed by the terms incorporated from the Marlow CBA, is the basis of his claims against Schiffahrts. Therefore, the first prong of the *Grigson* test is satisfied for the application of equitable estoppel.

And as for the second prong, plaintiff's complaint and allegations make clear that he is alleging "substantially interdependent and concerted misconduct" between Marlow (signatory) and Schiffahrts (non-signatory), which confirms that Schiffahrts may invoke equitable estoppel here to compel arbitration. Plaintiff repeatedly alleges in his complaint that "Defendants individually and/or collectively…" are responsible for his injury, and he does not in any way distinguish between the alleged misconduct or negligence of each Defendant.[28] For example, he alleges, *inter alia*, that "Defendants individually and/or collectively employed the Plaintiff… and/or were the owners, operators, managers and/or

---

[28] See R. Doc. 1-2, p. 2, 5-7.

13

owners *pro hac vice* of the M/V BBC AMISIA" and "Defendants, individually and

collectively, were negligent in the following particulars ...," as well as broadly characterizing

the three named entities as his employer in his claim for maintenance and cure."[29]

In short, plaintiff's Original Petition and the allegations therein are a prime example

of asserting interdependent and concerted misconduct between a signatory and a non-

signatory, such that application of equitable estoppel is warranted.  *See, e.g.*, *Psara Energy,*

*supra*; *Fin & Feather Chalets, LLC, supra* at *44 ("Likewise, Plaintiff in the present case

does not distinguish between the alleged misconduct of any Defendant. As such, the Court

finds that Plaintiff has alleged 'substantially interdependent and concerted misconduct'

between non-signatories and signatories, placing the dispute within the scope of *Grigson* and

*Brown [v. Pacific Life Ins. Co.*, 462 F.3d 384, 389 (5th Cir. 2006)]*. Accordingly, NTA may

invoke equitable estoppel to compel arbitration in the present case.").

Additionally, plaintiff has already availed himself of benefits delineated by the CBA,

as evidenced by his acceptance of settlement in exchange for a release of all claims.[30]  Article

19 of the Marlow CBA specifies the maximum disability payment to a crew officer such as

plaintiff in the event of a work-related injury, which is to be calculated according to the

degree of disability.[31] The release signed by plaintiff on 1 August 2017 establishes that he

accepted payment in accordance with that Article, and the pertinent caselaw prevents

plaintiff from now disclaiming obligations under that same CBA.  As the *Psara Energy* court

emphasized, plaintiff "cannot claim the benefit of the contract and simultaneously avoid its

---

[29] R. Doc. 1-2, p. 2-3, 7.
[30] R. Doc. 18- 5; R. Doc. 18-3, Art. 19.
[31] R. Doc. 18-3, Art. 19.

burdens, because this disregards equity and the entire purpose of the FAA." 427 F.Supp.3d at

866 (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anglagen GMBH*, 206 F.3d

411, 418 (4th Cir. 2000)) (internal quotation marks omitted). This fact further underscores

that the doctrine of equitable estoppel applies here, as plaintiff has already taken advantage

of certain terms and conditions from the Marlow CBA while he now attempts to disregard

others by filing this suit instead of an arbitration.

In sum, *Grigson* and its applicable progeny illustrate that the facts here are precisely

what the "intertwined claims" doctrine aims to address.  Because plaintiff's claims inherently

rely on his employment agreement and he alleges a litany of "interdependent and concerted

misconduct" by the defendants together, Schiffahrts is entitled to enforce the arbitration

clause as a non-signatory under the applicable Fifth Circuit jurisprudence.

### IV.     *Alternatively, Schiffahrts is entitled to a stay of the present litigation pending arbitration.*

In the event this Honorable Court elects not to apply the "intertwined claims" doctrine

to Schiffahrts, the circumstances here would warrant a stay of the pending litigation as to

Schiffahrts under the relevant line of Fifth Circuit jurisprudence.

The Fifth Circuit has addressed the issue of a non-signatory's request for a stay of

litigation pending arbitration on several occasions, and those cases yield a three-prong

inquiry for the circumstances under which litigation is to be stayed as to the non-signatory

pursuant to 9 U.S.C. §3:

1)  The arbitrated and litigated disputes involve the same operative facts;

2)  The claims asserted in the arbitration and litigation are "inherently inseparable"; and

3)  The litigation will have a "critical impact" on the arbitration.

*Waste Management, Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 342 (5th Cir. 2004); *see also Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000); *Fin & Feather Chalets, LLC, supra*.

The circumstances here easily fulfill those three requisite prongs of the analysis. First, as described herein, the arbitrated and litigated disputes would involve the same facts – there is one personal injury alleged by plaintiff here, arising from cargo operations on one voyage.[32] There is no way to categorize plaintiff's claims other than as involving the same set of facts.  Second, the claims are inherently inseparable, as Schiffahrts is the owner of the vessel that was operated/manned by Marlow, and each entity's liability (which is denied) is linked to the other and also may invoke principles of comparative fault.  And as noted earlier, plaintiff's allegations do not distinguish between Schiffahrts and Marlow in any of his claims.  *See Fin & Feather Chalet, LLC, supra* at *46-47 ("Because Plaintiff makes the same claims against every defendant, … it has provided the Court with no basis to conclude that its claims can be separated.").

Finally, the litigation would have a "critical impact" on the arbitration, as there is the potential for inconsistent results and issues with fairly adjudicating comparative fault, if any (which, again, both Schiffahrts and Marlow deny).  *See id.* at *47 ("Finally, (3) given that Plaintiff alleges that each defendant is liable for the same damages, splitting the present litigation into two proceedings—one in court, another before an arbitrator—would prevent the arbitrator from fully resolving the present dispute, thereby critically impacting the

---

[32] R. Doc. 1-2.

arbitration and potentially 'destroying the signatories' right to a meaningful arbitration.'"). Where allowing a lawsuit to proceed against a non-signatory would undermine the signatory's arbitration proceedings, that result "thereby thwart[s] the federal policy in favor of arbitration," and cannot stand. *Hill v. G.E. Power Systems, Inc.*, 282 F.3d 343, 348 (5th Cir. 2002).

Therefore, because the Fifth Circuit's three (3) prongs are fulfilled, a stay of any litigation against Schiffahrts is warranted here, in the event the Court orders arbitration of plaintiff's claims only against Marlow.

## Conclusion

In sum, arbitration of this matter is mandatory under the Convention,[33] and Schiffahrts is entitled to enforce the arbitration provision as a non-signatory under the Fifth Circuit's "intertwined claims" doctrine. Plaintiff's claims against signatory Marlow and non-signatory Schiffahrts unquestionably are grounded in his employment aboard the BBC AMISIA, which the Marlow CBA governs. And he does not distinguish between the defendants as to alleged wrongdoing or roles and seeks the same damages from both entities, which thus underscores the "intertwined" nature of his claims. Therefore, the doctrine of equitable estoppel allows Schiffahrts to enforce the arbitration clause as well, warranting that plaintiff be ordered to arbitrate. Alternatively, in the event the Court compels arbitration only against Marlow, Schiffahrts respectfully requests a stay of the present litigation due to the inherently inseparable nature of the arbitrated and litigated claims.

---

[33] See R. Doc. 18, which Schiffahrts adopts on this issue.

17

Thus, Schiffahrts respectfully requests that this Honorable Court grant its motion to compel arbitration, pursuant to 9 U.S.C. §201 *et seq*.

Respectfully submitted,

**MURPHY, ROGERS, SLOSS,**
**  GAMBEL & TOMPKINS**

*/s/ Peter B. Tompkins*
Peter B. Tompkins (*pro hac vice*)
ptompkins@mrsnola.com
Tarryn E. Walsh
S.D. Tex. No. 3514872, Tex. Bar No. 24117884
twalsh@mrsnola.com
701 Poydras St., Suite 400
New Orleans, LA  70139
Telephone 504.523.0400
***Attorneys for***
***HS Schiffahrts GmbH & Co. KG MS "Jan"***

## Certificate of Conference

As evidenced by R. Docs. 15 through 17, the parties have conferred regarding the subject of this motion, and plaintiff is opposed to arbitration of his claims.

*/s/ Tarryn E. Walsh*

## Certificate of Service

**I HEREBY CERTIFY** that I have on July 10, 2020, served a copy of the foregoing pleading on counsel for all parties to this proceeding, either by hand, by email, by telefax, by using the court's electronic filing system or by placing same in the United States Mail, properly addressed, and first-class postage prepaid.

*/s/ Tarryn E. Walsh*

4847-4813-5106, v. 1

18