United States District Court
Southern District of Texas
**ENTERED**
December 21, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SERGIY GUMENYUK, § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | CIVIL ACTION NO. H-20-00285 |
| § | |
| MARLOW NAVIGATION COMPANY, LTD, § | |
| JANS HS SCHIFFAHRTS GMBH, and § | |
| HS SCHIFFAHRTS GMBH & CO KG, § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND RECOMMENDATION

Pending in this case that has been referred to the undersigned Magistrate Judge for all further pretrial proceedings is Defendant Marlow Navigation Company, Ltd's Motion to Compel Arbitration (Document No. 18), and Defendant HS Schiffahrts GmbH & Co KG's Motion to Compel Arbitration (Document No. 19). Having considered the motions, the responses and additional briefing, the Seafarer's Employment Agreement signed by Plaintiff, the terms of collective bargaining agreement with the Black Sea Seamans' Trade Union, of which Plaintiff was a member, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that the two Motions to Compel Arbitration (Document Nos. 18 & 19) be DENIED.

### I.   Background

This is an admiralty case brought by Plaintiff Sergiy Gumenyuk ("Gumenyuk") under the Jones Act, and under general maritime principles of unseaworthiness and maintenance and cure against Defendants Marlow Navigation Company, Ltd. ("Marlow") and Jans HS Schiffahrts GmbH

and HS Schiffahrts GmbH & Co KG (collectively referred to as "Schiffahrts")[1] to recover for injuries Gumenyuk sustained in this District on November 16, 2016. Gumenyuk is Ukranian. Marlow is incorporated and based in Cyprus. Schiffahrts is German company and was the owner of the BBC AMISIA, the vessel on which Gumenyuk served as a chief mate/chief officer, and on which he was injured.

Gumenyuk filed this case in state court under the "savings to suitors" provisions in the Jones Act. Marlow removed the case on the basis that the subject matter of the lawsuit related "to an arbitration agreement falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards," 9 U.S.C. § 205. Notice of Removal (Document No. 1) at 2. In an Order entered on May 11, 2020, Gumenyuk's Motion to Remand was denied. (Document No. 14). As was contemplated by the Court's Order denying the Motion to Remand (Document No. 14 at 7), Defendants filed their respective Motions to Compel Arbitration (Document Nos. 18 & 19). It is those two motions that are pending, with Defendant Schiffahrts Motion to Compel Arbitration being predicated, as will be discussed herein, on the viability of Defendant Marlow's Motion to Compel Arbitration.

The following facts are relevant to the pending Motions to Compel Arbitration and are not in dispute:

> Gumenyuk is Ukranian and is a member of the Black Sea Seamans Trade Union. Gumenyuk was aboard the AMISIA on November 16, 2016, serving as Chief Officer, at the time of his injuries.
>
> Gumenyuk's position as Chief Officer on the AMISIA is set forth in a "Seafarer's

---

[1] In its Answer (Document No. 4), Defendant HS Schiffahrts GmbH & Co KG states that it was erroneously referred to in Plaintiff's state court petition as "Jans HS Schiffahrts GMBH and HS Schiffahrts GMBH & Co. KG."

Employment Agreement," dated October 27, 2016 (Document No. 19-1). That Seafarers Employment Agreement," stated that it was an "Employment Agreement . . . entered into between the Seafarer and the Employer (hereinafter called the Company)." Gumenyuk was identified as "The Seafarer" and Marcrew Schiffahrts GmbH was identified as "The Company." The Seafarer's Agreement had a term of four months, with a tentative commencement date of October 30, 2016, and a expiration date of February 27, 2017. The Seafarer's Agreement also provided as follows: "Terms and Conditions: As per collective bargaining agreement (BLACK SEA SEAMEN'S TRADE UNION CBA) between The Black Sea Seaman's Trade Union and the employer."

There is no Seafarer's Agreement between Gumenyuk and Marlow, and no Seafarer's Agreement between Gumenyuk and Schiffahrts.

Marlow and Marcrew Schiffahrts GmbH are separate companies. Marlow is a "third party ship and crew management company. . . incorporated in Cyprus in June 1982." Marcrew Schiffahrts GmbH "is a third party crew management company . . . incorporated in May 2000 in Germany." Declaration of Andreas Neophytou, Joint Managing Director of Marlow (Document No. 18-2).

In January 2013, and continuing through the date of Gumenyuk's injuries in November 2016, Marlow was party to a contract with Schiffahrts to "provide crew managing services" to the AMISIA.[2] Declaration of Andreas Neophytou, Joint Managing Director of Marlow (Document No. 18-2).

Marlow argues in its Motion to Compel Arbitration that Article 29 of the Collective Bargaining Agreement between it and the Black Sea Seaman's Trade Union provides for arbitration of any disputes between it and any Ukranian seafarer to whom the Collective Bargaining Agreement applies. Using what it construes as Gumenyuk's "judicial admission" that Marlow was his employer, Marlow maintains that the terms of its Collective Bargaining Agreement with the Union binds Gumenyuk to the arbitration of his claims in Cyprus. Marlow alternatively claims, in its Reply Brief, that even if it cannot be considered Gumenyuk's employer, the provisions in its Collective Bargaining Agreement with the Union apply to Gumenyuk because he was aboard a vessel that was

---

[2] The AMISIA, bearing IMO vessel number 9267297, was previously known as the JAN.

"manned" by Marlow. Schiffahrts, arguing that any claim against it is intertwined with the claims against Marlow, maintains that it is also entitled to rely on the arbitration provisions in the Collective Bargaining Agreement.[3]

**II.     Discussion**

"[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Under Chapter 2 of the Federal Arbitration Act, cases arising under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention") are "deemed to arise under the laws and treaties of the United States." *Southwest LTC-Management Services, LLC v. Lexington Ins. Co.*, No. 1:18-CV-00491-MAC, 2019 WL 1715832 *2 (E.D. Tex. Mar. 29, 2019), *report and recommendation adopted*, 2019 WL 1695498 (E.D. Tex. Apr. 17, 2019). As such, federal district courts may "compel arbitration in accordance with agreements," as well as "enforce awards . . . falling within the Convention." *Id.* "For an arbitration agreement to be covered by the Convention, four requirements must be met: (1) there must be an agreement in writing to arbitrate the dispute; (2) the agreement must provide for arbitration in the territory of a Convention signatory; (3) the agreement to arbitrate must arise out of a commercial legal relationship; and (4) at least one party to the agreement must not be an American citizen." *Stemcor USA Inc. V. CIA Siderurgica do Para Cosipar*, 927 F.3d 906, 909-910 (5th Cir. 2019). In determining, for purposes of the first requirement, whether there is an agreement

---

[3] Schiffahrts alternatively argues that it is entitled to a stay of Gumenyuk's claims against it until such time as any arbitration proceeding as between Gumenyuk and Marlow is completed.

4

to arbitrate the dispute, the key inquiry is whether the parties consented to arbitration. *See GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S.Ct. 1637, 1649 (2020) (Justice Sotomayor, concurring) ("It is a 'basic precept,' *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010), that '[a]rbitration under the [FAA] is a matter of consent, not coercion,' *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989); *see also*, *e.g.*,*Lamps Plus, Inc. v. Varela*, 587 U.S. ___, ___, 139 S.Ct. 1407, 1416, 203 L.Ed.2d 636 (2019) ("Consent is essential under the FAA"); *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 299, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010) ("[T]he first principle that underscores all of our arbitration decisions" is that "[a]rbitration is strictly 'a matter of consent'")). It is here that Defendants' Motions to Compel Arbitration fail.

The Collective Bargaining Agreement relied upon by Marlow was between Marlow Navigation Company Limited and The Black Sea Seaman's Trade Union, and it is Marlow and The Black Sea Seaman's Trade Union that are the "Contracting Parties" under the Collective Bargaining Agreement. In all relevant parts, the Collective Bargaining Agreement between Marlow and the Union provided:

> Article 1: Application
> 1.1 This Agreement sets out the standard terms and conditions applicable to all Ukranian seafarers serving on any ship manned by Marlow Navigation Company Ltd.
> 1.2 This Agreement is deemed to be incorporated into and to contain the terms and conditions of employment of any seafarer to whom this Agreement applies whether or not the company has entered into an individual Employment Agreement with the Seafarer.
> 1.3 This Agreement requires the Companies to employ the seafarers on the terms and conditions of the CBA, and to enter into individual Employment Agreement[s] with any seafarer to whom this Agreement applies. The company undertakes that it will comply with all the terms and conditions of this Agreement.

* * *

> Article 19: Disability
> 19.1 A seafarer who suffers permanent disability as a result of a work related accident whilst in the employment of the company regardless of fault but excluding permanent disability due to willful acts, including accidents occurring while traveling to or from the ship, and whose ability to work as a seafarer is reduced as a result thereof, shall in addition to sick pay, be entitled to compensation according to the degree of disability but not exceeding the following:
> Officers US$ 240.000,00
> Ratings US$120.00,00
> 19.2 The degree of disability suffered by the seafarer shall be determined by a doctor appointed by the Company. If a doctor appointed by or on behalf of the seafarer disagrees with the assessment, a third doctor may be nominated jointly between the company and the seafarer and the decision of this doctor shall be final and binding on both parties.
> 19.3 Any payment effected under 19.1 above, shall be regarded as final and total settlement of the case.

* * *

> Article 29: Disputes and Arbitration
> 29.1 For any disputes a Seafarer is compelled to approach the Union, which will in turn endeavor to settle the dispute directly with the Company.
> 29.2
> (a) This agreement shall be subject to Cyprus Law and international conventions, treaties and covenants wherein Cyprus is a signatory.
> (b) The Contracting Parties shall discuss and negotiate amicably settlement of any situations and/or differences that may arise.
> (c) In the event that the Contracting Parties are unable to reach an agreement, the dispute shall be referred to the Cyprus Courts.
> (d) Any award rendered by the arbitrator shall be final and binding on the Contracting Parties.

(Document No. 18-3 at 2, 15, 19).

Marlow's Motion to Compel Arbitration fails for three reasons, all of which relate to whether there was an agreement to arbitrate, and whether, relatedly, Gumenyuk consented to arbitration as a method of resolving any dispute with Defendants. First, the Seafarer's Agreement signed by Gumenyuk identified Marcrew Schiffahrts GmbH as "the Company" party to the agreement, and

incorporated the Collective Bargaining Agreement between the Union and Marcrew.[4] Although Marlow argues that notwithstanding the Seafarer's Agreement Gumenyuk signed with Marcrew, its Collective Bargaining Agreement with the Union applies to Gumenyuk under Article 1 because Marlow "manned" the AMISIA, Marlow has not addressed the evidence that Marcrew, at a minimum, also "manned" the AMISIA by virtue of its Seafarer's Agreement with Gumenyuk. Moreover, Marlow has not explained how Gumenyuk could be subject to two separate Collective Bargaining Agreements at the same time – one between the Union and Marlow, and the other between the Union and Marcrew – which contain different, and seemingly conflicting provisions,

---

[4] Both sides spend significant time in their initial briefing arguing about whether Gumenyuk judicially admitted that Marlow was his employer, despite the fact that Marlow denies it was Gumenyuk's employer. Moreover, the allegations in Gumenyuk's state court pleading relied on by Marlow for its judicial admission argument are not so clear and unequivocal so as to constitute a judicial admission of Marlow's "employer" status. Gumenyuk alleged in paragraph 7 of his state court petition:

> At all times pertinent hereto, Plaintiff Mr. Sergiy Gumenyuk (hereinafter sometimes "Sergiy" or "Chief Mate") was employed by Defendants as a Jones Act Seaman and a member of the crew of the M/V BBC AMISIA (hereinafter sometimes "the Ship" or "the Vessel"), as provided by 46 USC § 30104, et seq., Defendants individually and/or collectively employed the Plaintiff as a Jones Act seaman and/or were the owners, operators, managers and/or the owners pro hac vice of the M/V BBC AMISIA. At all times material hereto, Plaintiff was acting within the course and scope of his employment as a seaman (and in fact as Chief Mate) aboard the Ship. At all times material hereto, the M/V BBC AMISIA worked as a commercial cargo ship operating in international waters and on the waters of the United States, including in the Port of Houston. On the day of the Subject incident, the Ship was berthed alongside or near the Manchester Terminal, located along the Houston Ship Channel, within the Port of Houston, Harris County, Texas.

(Document No. 1-2 at 2-3). "To qualify as a judicial admission, [a] statement must be (1) made in a judicial proceeding; (2) contrary to a fact essential to the theory of recovery; (3) deliberate, clear, and unequivocal; (4) such that giving it conclusive effect meets with public policy; and (5) about a fact on which a judgment for the opposing party can be based." *Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 329 (5th Cir.), *cert. denied*, 534 U.S. 997 (2001). Because the allegations in paragraph 7 of Gumenyuk's petition were equivocal, those allegations cannot be considered a judicial admission that Marlow was his employer.

about the law to be applied as well as the locale of any argued for arbitration.[5] Second, Article 29 of the Marlow Collective Bargaining Agreement, while utilizing the word "Arbitration" in the label, and having a singular reference to "arbitrators" in 29.2(d), does not state that a seafarer's claims are subject to "arbitration." All Article 29.2(d) says is that "[a]ny award rendered by the arbitrators shall be final and binding on the Contracting Parties." Nowhere in Article 29, or anywhere else in the Marlow Collective Bargaining Agreement, is there any provision whereby Gumenyuk himself, or the Union on his behalf, agreed that a seafarer's claims are subject to arbitration. Marlow argues that Article 29.2 implies as much, and that the reference in Article 29.2(c) to the "Cyprus Courts" could only plausibly mean "Cyprus courts of arbitration." But there is nothing in the record to support that argument, and nothing from which the Court could make such a determination. The plain and ordinary meaning of the word "courts" is simply not the equivalent of arbitration, *see Forsythe Int'l, S.A. v. Gibbs Oil Co. of Texas*, 915 F.2d 1017, 1022 (5th Cir. 1990)("As a speedy and informal alternative to litigation, arbitration resolves disputes without confinement to many of the procedural and evidentiary strictures that protect the integrity of formal trials."). In addition, Marlow has not come forth with any evidence, in affidavit/declaration form or otherwise, that the words "courts," "arbitrators" and "arbitration" are all equivalent under what it claims is controlling Cyprus law. Third and finally, Article 29.2(b), (c), and (d) all refer to the "Contracting Parties." Construing Article 29.2(b), (c), and (d), as written, which is what the Court is obliged to do, *see Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1632, 200 L. Ed. 2d 889 (2018) ("arbitration agreements . . . must be

---

[5] Article 29 of the two Collective Bargaining Agreements are identical except for the reference to German law and German courts in the Marcrew Collective Bargaining Agreement. Marlow does argue in its Reply Brief that requiring Gumenyuk to potentially arbitrate his claims in two different forums is not unheard of, but Marlow provides no context or explanation as to how that would be accomplished or how potentially inconsistent results could be reconciled.

enforced as written"), Article 29.2 appears to apply to disputes between the Union and Marlow about the Collective Bargaining Agreement, and not necessarily to disputes between Marlow and individual seafarers. And, again, Marlow may argue that such should be implied, but nothing in Article 29.2 so states. In the absence of an express agreement by Gumenyuk, or the Union on his behalf, that seafarers' claims are subject to arbitration, it cannot be said that Article 29 of the Marlow Collective Bargaining Agreement is an agreement to arbitrate the claims made the basis of this suit. *See e.g., O'Shaughnessy v. Young Living Essential Oils, L.C.*, 810 F. App'x 308, 314 (5th Cir. 2020) (upholding denial of motion to compel arbitration where alleged agreement to arbitrate had conflicting provisions and the district court determined, based on Utah law, that there was no "meeting of the minds" relative to arbitration).

As for Schiffahrts' Motion to Compel Arbitration, because it is premised on the viability of Marlow's Motion to Compel Arbitration, which the Magistrate Judge recommends be denied, and because there is no agreement, at all, as between Schiffahrts and Gumenyuk, Schiffahrts' Motion to Compel Arbitration should also be denied.

### III. Conclusion and Recommendation

Based on the foregoing and the conclusion that there is no agreement between Plaintiff Gumenyuk and Defendant Marlow relative to Plaintiff Gumenyuk's employment aboard the AMISIA, on which his alleged injuries occurred, much less an agreement to submit any claims related thereto to arbitration, and that Article 29 of the Collective Bargaining Agreement relied upon by Marlow has not been shown to apply to Plaintiff Gumenyuk and/or the claims at issue in this case, the Magistrate Judge

RECOMMENDS that Defendant Marlow Navigation Co. Ltd.'s Motion to Compel Arbitration (Document No. 18) be DENIED. Based on that recommendation, and Defendant Schiffahrts' reliance on the viability of Marlow's Motion to Compel Arbitration, the Magistrate Judge further RECOMMENDS that Defendant HS Schiffahrts GmbH & Co. KG's Motion to Compel Arbitration (Document No. 19) also be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b). Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this  21st   day of December, 2020.

*Frances H. Stacy*

———————————                                         ———————
FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE